UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELA LENCIONI,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UA LOCAL 467, PLUMBERS,<br>STEAMFITTERS & REFRIGERATION<br>FITTERS,<br><br>　　　　　Defendant. | Case No. 16-cv-04518-JCS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>Re: Dkt. No. 9 |

## I.   INTRODUCTION

Plaintiff Daniela Lencioni moves for remand to state court after Defendant UA Local 467, Plumbers, Steamfitters & Refrigeration Fitters ("Local 467") removed the action from the Superior Court of California, County of San Mateo. Local 467 contends that federal jurisdiction exists because Labor Management Relations Act ("LMRA") section 301, 29 U.S.C. § 185, preempts two of Lencioni's causes of action. Lencioni disagrees, arguing that her Complaint does not raise a federal question because there is no dispute over the terms of the collective bargaining agreement to which she and Local 467 are parties. The Court heard Lencioni's motion on October 14, 2016.[1] For the reasons explained below, Lencioni's Motion to Remand is GRANTED.[2]

## II.   BACKGROUND

### A.   Procedural History

Lencioni filed her Complaint in San Mateo County Superior Court on July 7, 2016. *See* Not. of Removal ("NOR," dkt. no. 1, Ex. A) at 9. She served the Complaint on Local 467 on

---

[1] Lencioni had also requested an award of attorney's fees in her motion, but withdrew that request at the hearing.
[2] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

July 11, 2016. *See* NOR at 4. Local 467 timely filed notice of removal on August 10, 2016. *See* NOR at 1. On September 9, 2016, Lencioni moved to remand the case to state court. *See* Plaintiff's Mot. to Remand (the "Motion," dkt. no. 9).

### B. The Complaint

#### 1. Allegations

In the Complaint, Lencioni asserts the following general allegations that underlie all her claims. Lencioni started working for Local 467 as an office assistant in June 2006. NOR at 10. She was promoted to the role of office manager in August 2010. *Id.* Around September 24, 2015, she discussed taking a medical leave of absence for anxiety disorder with Natalie Naylor, a business representative for the Office and Professional Employees International Union, Local 3 AFL-CIO ("OPEIU"). *Id.*; *see also id.* at 3. A week later, Lencioni discussed taking that leave of absence with her supervisor, Mike Swanson, and prepared a letter requesting authorization for it. *Id.* Swanson directed Lencioni to discuss the leave of absence with Mark Burri, who was assuming Swanson's role at Local 467. *Id.* Swanson refused to sign the authorization letter. *Id.* The next day, Lencioni asked Swanson if he had addressed her request with Burri. *Id.* at 11. Swanson told Lencioni that Burri would not approve her request and wanted the three of them to discuss it. *Id.* Neither Swanson nor Burri contacted Lencioni to discuss the request for almost two weeks. *Id.*

During the third week of October 2015, Lencioni met with Swanson and Burri. *Id.* Burri informed Lencioni that he would not approve her request for a leave of absence unless she took it "through state disability" and explained that "he would not be able to guarantee that he could hold her position for an unspecified length of time." *Id.* Lencioni responded that her doctor had instructed her to take short-term disability that would start October 28, 2015. *Id.*

Lencioni left work and started her leave of absence on October 28, 2015. *Id.* There was no contact between her and Local 467 until January 20, 2016, when she emailed Burri, Naylor, and Local 467's bookkeeper and informed them that her leave of absence would end February 22, 2016. *Id.* One week later, Lencioni received a termination letter via email. *Id.* The letter explained that OPEIU's policy, described in Article 12 of the collective bargaining agreement

1  ("CBA") between Local 467 and OPEIU, limited leaves of absence to 90 days. *Id.* The letter also
2  explained that the CBA required her to provide a week's notice and a doctor's certification that
3  she was able to return to work within that 90-day period, but had failed to do so. *Id.* The letter
4  then stated that it had been "determined that [Lencioni] voluntarily left work without good cause
5  on Wednesday, October 28, 2015." *Id.*

### 2. Claims

Lencioni asserted seven claims against Local 467 in the Complaint, five of which allege the following statutory violations of California's Fair Employment and Housing Act ("FEHA"): disability discrimination; failure to provide reasonable accommodation; failure to engage in an interactive process; retaliation; and failure to prevent discrimination. *See* NOR at 11–15, 17–18 (citing Cal. Gov't Code §§ 12940(a), (h), (k), (m), (n)). Lencioni's two other claims assert that Local 467 violated the California Family Rights Act ("CFRA") and terminated her in violation of public policy (the "termination claim"). *See id.* at 15–17, 19–20 (citing *inter alia* Cal. Gov't Code § 12945.2). Because they underlie Local 467's removal of the case, relevant here are Lencioni's claims of retaliation in violation of FEHA and termination in violation of public policy.

In her retaliation claim, Lencioni alleges that her leave of absence was an accommodation, and requesting and taking that leave constituted an exercise of her FEHA rights. *Id.* at 17. She further alleges that Local 467 discharged her for requesting and taking that leave of absence, which constituted retaliation in violation of FEHA. *Id.* (citing Cal. Gov't Code § 12490(h)).

Lencioni alleges in her termination claim that Local 467 unlawfully terminated her for having a disability and in retaliation for exercising her rights under FEHA. *Id.* at 19–20. She also alleges that Local 467 was subject to CFRA during the relevant period of her employment and, as a result, unlawfully terminated her for exercising her statutory right to 12 weeks' leave for a serious health condition. *Id.* at 19.

### C. Notice of Removal

In its Notice of Removal, Local 467 asserted that the Court has federal question jurisdiction. NOR at 3 (citing 28 U.S.C. § 1331). Local 467 specifically asserted that Lencioni's retaliation and termination claims, and the facts that underlie them, require interpretation of the

3

1  CBA that governed her employment and Local 467's obligations regarding employee medical
2  leaves of absence and termination. *Id.* at 3–4. According to Local 467, the CBA affects
3  commerce as defined by LMRA section 301 ("section 301," 29 U.S.C. § 185) and, therefore,
4  Lencioni's retaliation and termination claims are federally preempted. *Id.*

### D. The Collective Bargaining Agreement

According to Local 467, the CBA between OPEIU and Local 467 in effect at the time of Lencioni's discharge contains provisions relevant to the case. *See* NOR at 3–4. Specifically, Local 467 refers to Articles 4 ("Notice of Layoff or Discharge"), 11 ("Sick Leave"), 12 ("Leaves of Absence"), 14 ("Seniority"), 19 ("Non-Discrimination"), and 20 ("Grievance Procedure"). *See id.* In its Opposition, Local 467 almost exclusively refers to CBA Article 12 as the source of federal preemption. *See* Opp'n, dkt. no. 10, at 4–11, *but see* Opp'n at 6, n. 4 (stating that Lencioni was required to comply with the CBA's grievance process as provided in Article 20).

Under CBA Article 12, "Leaves of Absence," Local 467 is required to provide medical leaves of absence for employees for up to 90 days. NOR, Ex. B, at 56. Specifically, under Section 2 of Article 12:

> An employee who has exhausted their paid sick leave shall receive a leave of absence of up to ninety (90) days without pay or benefits for reasons of bona-fide illness or injury. It is agreed and understood that this provision applies to all illness, injuries and maternity leaves.

*Id.* Under Section 3, employees who take a leave of absence are required to indicate in writing that they intend to return to their position of employment. *Id.* Section 3 further provides, "Upon returning . . . , the employee shall provide the Employer with one week's prior notice, and have a doctor's certificate that she[] is ready and able to return to work. Employees not conforming to this Section shall lose all seniority rights." *Id.* Section 4 provides, "Employees returning from leave of absence . . . shall be returned to the job held at the time said leave was granted." *Id.*

### E. The Motion

Lencioni moves for remand to state court, generally contending that her retaliation and termination claims do not arise under section 301, but rather rest on facts and state law rights entirely independent of the CBA. Mot. at 2. In support of this contention, Lencioni makes two

4

arguments.

First, she argues that she has not alleged that Local 467 breached the CBA, stating that Local 467 did not violate the CBA's provisions governing employee leaves of absence. *Id.* at 4. She concludes that section 301 is inapplicable and her claims are not preempted. *Id.*

Second, Lencioni argues that section 301 does not preempt a state law claim when the underlying factual inquiry does not require interpreting a provision in a collective bargaining agreement and, here, there is no dispute regarding the meaning of the CBA. *Id.* at 4-5 (citing *inter alia Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1998)). Rather, according to Lencioni, she has properly asserted violations of FEHA that underlie her retaliation and termination claims. *Id.* at 5–6. Those claims are based on factual determinations of whether she requested a reasonable accommodation for her disability under FEHA and was terminated by Local 467 because of that request or the disability itself. *Id.* at 5.

In opposition, Local 467 claims that remand is improper in light of the Ninth Circuit's recent decision in *Kobold v. Good Samaritan Regional Medical Center*, ___ F.3d ___, 2016 WL 4191521 (9th Cir. Aug. 9, 2016). Opp'n at 1. Local 467 specifically contends that section 301 completely preempts state law and, under *Kobold*, Lencioni's retaliation and termination claims fall within section 301's ambit. *Id.* at 1, 3-4. In a footnote, Local 467 alternatively contends that, if the Court finds either claim is "arguably preempted" by section 301, it may presently exercise jurisdiction and reserve resolving the preemption question for a later date. *Id.* at 4, n. 2 (citing *Navarro v. Servisair, LLC*, No. C 08–02716 MHP, 2008 WL 3842984, at *5 (N.D. Cal. Aug. 14, 2008)). Local 467 also states that, if the Court finds any claim is preempted, it may exercise supplemental jurisdiction over all Lencioni's claims. *Id.* at 11.

Explaining that *Kobold's* first step requires the Court to determine whether Lencioni's retaliation or termination claim involves a right conferred on her by state law, not the CBA, Local 467 argues that, here, the facts underlying Lencioni's retaliation and termination claims involve a right conferred on Lencioni through the CBA. *Id.* at 1. Specifically, Local 467 asserts that those claims are factually based on Lencioni's exercise of her leave of absence rights under Article 12 of the CBA and Local 467's retaliatory termination of Lencioni for exercising those rights. *Id.* at

5

1–2, 5. In making that assertion, Local 467 contests Lencioni's allegation that it was subject to CFRA, arguing that it did not employ at least 50 people within a 75 mile radius at the time Lencioni exercised her leave rights. Mot. at 5–6 (citing Declaration of Mark Burri ("Burri Decl.," dkt. no. 10-1) ¶ 4). Local 467 also asserts that Lencioni's contention that her leave of absence constituted an exercise of her FEHA rights "is mere artful pleading." *Id.* at 6. As to *Kobold's* first step, Local 467 concludes that Lencioni exercised her right to a leave of absence exclusively under the CBA and is therefore bound by the procedures and limitations the CBA contains. *Id.*

Local 467 next explains that, even if the rights exercised by Lencioni exist independently of the CBA, *Kobold's* second step instructs the Court to determine whether consideration of those rights requires substantial analysis of the CBA. *Id.* at 1. According to Local 467, substantial and independent analysis of the CBA will be required to adjudicate Lencioni's retaliation and termination claims. *See id.* at 6–11.

Local 467 makes two interrelated arguments that adjudication of Lencioni's retaliation claim will require substantial analysis of the CBA. First, Local 467 argues that deciding Lencioni's retaliation claim will require such analysis due to the burden-shifting framework in FEHA cases. *Id.* at 7. Local 467 asserts that Lencioni's retaliation claim presents the issue of whether Local 467's stated reason for terminating Lencioni was pretextual and unworthy of credence. *Id.* at 8. Local 467 further asserts that, at trial, it will necessarily argue "that it simply followed the procedures fully set forth in Article 12 of the collective bargaining agreement" and, as a result, each phase of the burden-shifting framework will require "substantial analysis" of the CBA.[3] *Id.* at 8, *see also id.* at 10-11 (citing *Horne v. Dist. Council 16 Int'l Union of Painters &*

---

[3] To support this position, Local 467 points to the email in which Burri notified Lencioni that she had been terminated for exceeding the 90-day limitation for leaves of absence provided under Article 12 of the CBA. Mot. at 8. In the email, Burri allegedly stated, "Effective today January 27, 2016, your employment with UA Local 467 is terminated. [¶] As required in your OPEIU Local 3 CBA, Article 12 - Leaves of Absence, UA Local 467 provided you a leave of absence of up to (90) days (10/29/2016 - 1/26/2016). As of today, a medical physician's letter validating your claim for leave of absence due to medical reasons has not been provided. Furthermore, one week's prior notice and a doctor's certificate that you are ready and able to return to work have not been provided within the (90) days leave of absence. As such, it is determined that you voluntarily left work without good cause on Wednesday, October 28, 2015 . . . ." Burri Decl., Ex. 1 (dkt. no. 10-2) at 2.

*Allied Trades*, No. C 10–04653 CW, 2011 WL 176821, at *4 (N.D. Cal. Jan. 19, 2011); *Madison v. Motion Picture Set Painters & Sign Writers Local 729*, 132 F.Supp.2d 1244, 1254 (C.D. Cal. 2000)). Second, Local 467 argues that adjudicating Lencioni's retaliation claim also requires consideration of the CBA beyond its actual terms. *Id.* Specifically, Local 467 asserts that an arbitrator interpreting Article 12 must look to the language itself as well as the implementation and enforcement of Article 12 in evaluating Local 467's conduct. *Id.* at 9 (citing *Kobold*, 2016 WL 4191521, at *15). Local 467 further maintains that evidence demonstrating it had strictly abided with Article 12 in the past will be directly relevant to the issue of pretext and, as a result, "[a] labor arbitrator, not a court, must make [an] analysis of the [CBA]." *Id.*

Regarding Lencioni's termination claim, Local 467 argues that adjudication substantially depends on analyzing the CBA because it is based on the allegation that she was terminated in retaliation for exercising her rights under FMLA and CFRA.[4] *Id.* at 11. Local 467 concludes that, "[b]ecause Lencioni's employment was not covered by the FMLA or CFRA, in order to adjudicate this cause of action the court must undertake an analysis of her contractually-provided leave and subsequent failure to comply with the contractual provisions regarding her return to duty." *Id.*

In reply, Lencioni reiterates her contention that her right to a medical leave of absence arose from FEHA, a state law that independently entitles an employee to the reasonable accommodation of medical leave with no fixed duration so long as it does not impose an undue burden on her employer. Reply, dkt. no. 11, at 2–3. Lencioni further states that the meaning of the CBA is irrelevant because "there is no dispute about the meaning of the CBA provision at issue or that it was applied to" her. *Id.*; *see also id.* at 8 ("The import of defendant's application of an unambiguous CBA provision does not necessitate interpretation of the provision."). Rather, she claims that the issue is whether Local 467's "failure to engage [her] in an interactive process and failure to provide additional unpaid medical leave as a reasonable accommodation violated [her FEHA] rights." *Id.* at 2; *see also id.* at 3 (arguing that, under *Jimeno v. Mobil Oil Corp.*, 66

---

[4] The Court notes that the paragraph in the Complaint to which Local 467 cites for this argument refers to FEHA, not FMLA. *See* Mot. at 11 (citing Compl. ¶ 58). However, because Local 467's argument does not appear to consider FEHA, the Court describes the argument here as it is made in the brief.

F.3d 1514, 1524–28 (9th Cir. 1995), reasonable accommodation and interactive process claims under FEHA can be evaluated independently of a collective bargaining agreement). Lencioni concludes, "This alone establishes no preemption." *Id.*; *see also id.* at 6–7.

Lencioni also disputes Local 467's arguments regarding the burden-shifting framework in FEHA cases, stating that the framework "does not apply in disability discrimination cases where there is direct evidence, like here, that employer treated employee differently 'because of' a disability, irrespective of ill will." *Id.* at 2-3. She also posits that Local 467's assertion that it relied on the CBA when it terminated her constitutes an admission that "its decision was made because of [her] disability, which, in turn, does not shift the burden back to [her] to show pretext." *Id.* at 8. She similarly asserts that Local 467 ignored broader discussion of FEHA, which underlies her retaliation and termination claims and "undeniably confers a right to a leave of absence," which can be unpaid and for an unfixed duration. *Id.* at 5–6 (citing *Hanson v. Lucky Stores, Inc.* 74 Cal.App.4th 215, 226 (1999); *Sanchez v. Swissport, Inc.* 213 Cal.App.4th 1331, 1338 (2013)). She also objects to Local 467's presentation of evidence that it was not governed by CFRA at the time of her termination, arguing that the evidence is irrelevant and that the Court must determine jurisdiction from the face of the Complaint alone. *Id.* at 5 (citing *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1075 (9th Cir. 2005)).

### III.   ANALYSIS

#### A.   Legal Standard for Removal and Remand

A defendant may remove a civil action filed in state court if the action could have been filed originally in federal court. 28 U.S.C. § 1441(a). Original jurisdiction may be based on diversity or the existence of a federal question, as set forth in 28 U.S.C. §§ 1331 and 1332. Subject matter jurisdiction under 28 U.S.C. § 1331, based on the existence of a federal question, requires a civil action to arise under the constitution, laws, or treaties of the United States. In addition, a federal court can exercise supplemental jurisdiction over related state law claims. 28 U.S.C. § 1367.

A plaintiff may move to remand a case to the state court from which it was removed if the district court lacks jurisdiction or if there is a defect in the removal procedure. 28 U.S.C.

8

1  § 1447(c) ("If at any time before final judgment, it appears that the district court lacks subject
2  matter jurisdiction, the case shall be remanded."). The removal statutes are construed restrictively
3  so as to limit removal jurisdiction. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09
4  (1941). The Ninth Circuit recognizes a "strong presumption against removal." *Gaus v. Miles,*
5  *Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (internal quotation marks omitted). Any doubts as to
6  removability should be resolved in favor of remand. *Matheson v. Progressive Specialty Ins. Co.*,
7  319 F.3d 1089, 1090 (9th Cir. 2003). The defendant bears the burden of showing that removal is
8  proper. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).

9  "As a general rule, 'the presence or absence of federal-question jurisdiction is governed by
10 the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal
11 question is presented on the face of the plaintiff's properly pleaded complaint.'" *ARCO Envtl.*
12 *Remediation, L.L.C. v. Dep't of Health & Envtl. Quality*, 213 F.3d 1108, 1113 (9th Cir. 2000)
13 (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)) (alterations omitted). "The rule
14 makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive
15 reliance on state law." *Caterpillar*, 482 U.S. at 392.

16 The corollary to this rule, however, is the "complete preemption" doctrine, which states
17 that the preemptive force of some statutes is so strong that they "completely preempt" an area of
18 state law. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987). Furthermore, courts
19 have used the artful pleading doctrine in complete preemption cases. *See Lippitt v. Raymond*
20 *James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003). "Under the artful pleading doctrine,
21 'a plaintiff may not defeat removal by omitting to plead necessary federal questions in a
22 complaint.'" *Lippitt*, 340 F.3d at 1041 (quoting *Franchise Tax Bd. of the State of Cal. v. Constr.*
23 *Laborers Vacation Trust*, 463 U.S. 1, 22 (1983)).

24 **B.     Preemption by LMRA Section 301**

25 In this case, Local 467 argues that the "complete preemption" doctrine applies through
26 section 301, one of the three contexts in which the Supreme Court has applied the doctrine. *See*
27 *Californians for Alts. to Toxics v. N. Coast R.R. Auth.*, Nos. C-11-04102 JCS, C-11-4103 JCS,
28 2012 WL 1610756, at *8 (N.D. Cal. May 8, 2012) (describing the three contexts). Section 301

9

states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court has held that the preemptive scope of section 301 encompasses cases where resolution "is substantially dependent upon analysis of the terms of [a CBA]." *Allis–Chambers Corp. v. Lueck*, 471 U.S. 202, 220 (1985); *see also Ramirez v. Fox Television Station*, 998 F.2d 743, 748 (9th Cir. 1993) (holding that preemption applies to claims "either based upon a collective-bargaining agreement or dependent upon an interpretation of the agreement"). "Accordingly, preemption based on section 301 is proper 'even in some instances in which the plaintiffs have not alleged a breach of contract in their complaint, if the plaintiffs' claim is either grounded in the provisions of the labor contract or requires interpretation of it.'" *Rodriguez v. Pac. Steel Casting Co.*, No. 12–0353 NC, 2012 WL 2000793, at *3 (N.D. Cal. June 1, 2012) (quoting *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)).

As Local 467 points out, the Ninth Circuit recently provided further clarity of section 301 preemption analysis in *Kobold*. *See* 2016 WL 4191521, at *2–4. Before outlining *Burnside's* two-step inquiry required for analyzing section 301 preemption of state law claims, the Ninth Circuit explained that section 301 preemption has two aims. *Id.* at *2. First, the doctrine recognizes the congressional mandate that federal courts fashion federal common law for disputes arising out of labor contracts. *Id.* (quoting *Lueck*, 471 U.S. at 209). Second, section 301 preemption is designed to assure that agreements to arbitrate grievances grounded in or requiring the interpretation of a collective bargaining agreement are enforced, "regardless of the vagaries of state law and lingering hostility toward extrajudicial dispute resolution." *Id.* at *2–3 (quotation marks omitted) (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 122 (1994); *Lueck*, 471 U.S. at 210–11). However, the Ninth Circuit cautioned that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." *Id.* (quotation marks omitted) (quoting *Lueck*, 471 U.S. at 211).

Step one of the *Kobold* inquiry instructs a court to "determine whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA." *Id.* at *3 (quotation marks omitted) (quoting *Burnside*, 491 F.3d at 1059). To make this determination, a court must focus on "the *legal* character of a claim, as 'independent' of rights under the collective-bargaining agreement []and not whether a grievance arising from 'precisely the same set of facts' could be pursued." *Id.* (original italics and brackets) (quoting *Livadas*, 512 U.S. at 123). Section 301 preempts a claim *only* if it is founded *directly* on rights created by a collective bargaining agreement. *Id.* (quoting *Caterpillar*, 482 U.S. at 394). "If the right exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there." *Id.* (original brackets, quotation marks omitted) (quoting *Burnside*, 491 F.3d at 1059).

If a court reaches the second step of the *Kobold* inquiry, it determines whether the state law right asserted by the employee "is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* (quoting *Burnside*, 491 F.3d at 1059). Such substantial dependence "turns on 'whether the claim can be resolved by "look[ing] to' versus interpreting the CBA." *Id.* (original brackets) (quoting *Burnside*, 491 F.3d at 1059). If a collective bargaining agreement must be *interpreted*, the claim is preempted; however, "the term 'interpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'" *Id.* (quoting *Burnside*, 491 F.3d at 1060; *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000)). Elaborating, the Ninth Circuit explained that "[i]f the *claim* is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Id.* If a court finds that a state law claim is substantially dependent on analysis of a collective bargaining agreement, the claim is preempted by section 301; if not, the claim proceeds under state law. *Id.* (citing *Burnside*, 491 F.3d at 1059–60).

### C. The Claims Arise from State Law Rights

Local 467 premised its removal of the case on two of Lencioni's claims: retaliation under FEHA and termination in violation of public policy. Local 467 argues that, under *Kobold's* first step, the CBA, not independent state law, conferred upon Lencioni the rights that underlie these claims. The Court disagrees.

11

The rights asserted by Lencioni at issue, i.e., the legal character of her claims, are grounded exclusively in state law. *See Kobold*, 2016 WL 4191521, at \*3. Lencioni claims that Local 467 unlawfully retaliated against her in violation of FEHA, as provided in California Government Code section 12940(h). That section prohibits an employer from discharging an employee because she "opposed any practices under this part." Cal. Gov't Code § 12490(h). Lencioni has alleged that Local 467 violated this law by terminating her for requesting a reasonable accommodation for a disability, a right provided in California Government Code section 12940(m). Similarly, Lencioni claims that Local 467 terminated her in violation of public policy. California law prohibits an employer from terminating an employee for conduct conforming to the fundamental policies embodied in the state's statutes. *See Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 176 (1980). According to Lencioni, the public policies violated by Local 467 were contained in the provisions of FEHA and CFRA, two California statutes. Thus, the claims that premised Local 467's removal of the case, as well as the claims that underlie them, are all creations of California substantive law, not the CBA.

Indeed, the Ninth Circuit has expressly held that a retaliation claim under FEHA and a wrongful termination claim under *Tameny* are private rights of action that exist independently of any contractual right contained in a CBA. *See Detabali v. St. Luke's Hospital*, 482 F.3d 1199, 1203–04 (9th Cir. 2014) (holding that a FEHA retaliation claim was not preempted by section 301); *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 863 (9th Cir. 1987) (holding that the tort of wrongful termination in violation of public policy exists independently of contractual rights contained in a CBA), *cert. denied*, 486 U.S. 1054 (1988). In other words, Local 467's argument—that the factual basis underlying Lencioni's claims derived from her exercise of a particular provision contained in the CBA—is irrelevant at this step of the *Kobold* analysis.

### D. The Claims Do Not Require Interpretation of the CBA

The second *Kobold* step—whether resolving Lencioni's claims will require interpretation, not just consideration, of the CBA's terms—is a closer question. However, the Court is persuaded by Lencioni's argument that the factual inquiry underlying her claims does not require interpreting a provision in the CBA.

The Ninth Circuit has explained that "[t]he plaintiff's claim is the touchstone for this analysis; the need to interpret [a] CBA must inhere in the nature of the plaintiff's claim." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (en banc). Furthermore, "[w]hen the parties do not dispute the meaning of contract terms, the fact that a CBA will be consulted in the course of state law litigation does not require preemption. [Citation.] A defense based on the CBA is alone insufficient to require preemption." *Ward v. Circus Circus Casinos, Inc.*, 473 F.3d 994, 998 (9th Cir. 2007).

Lencioni does not dispute or otherwise refer to the meaning of the CBA in the claims stated in her Complaint or the arguments asserted in her Motion. She recognizes that she was subject to the CBA and that it served as Local 467's basis for terminating her. *See* Mot. at 2. In short, she does not contend that Local 467 violated her contractual rights under the CBA. Rather, Lencioni claims that Local 467 breached duties owed to her exclusively under California law.

Certainly those duties implicate the CBA. As Local 467 has stated, the CBA's leave of absence provision will likely serve as the basis for its defense in state litigation. However, Local 467 acknowledges that the factual inquiry will be whether it "reasonably relied on the processes set forth set forth in the [CBA] in terminating Lencioni." *See* Opp'n at 9. Local 467 has not argued that the case will hinge on whether it reasonably *interpreted* those provisions.

On this point, *Cramer* is instructive. There, the Ninth Circuit explained that "alleging a hypothetical connection between the claim[s] and the terms of the CBA is not enough to preempt the claim[s]: adjudication of the claim[s] must require interpretation of a provision of the CBA." *Cramer*, 255 F.3d at 691–92; *see also Burnside*, 491 F.3d at 1060. Furthermore, Local 467's suggestion that Lencioni's leave of absence arose exclusively under the CBA, and was removed from the scope of FEHA, is unpersuasive. As stated in *Cramer*:

> Where a party defends a state cause of action on the ground that the plaintiff's union has bargained away the state law right at issue, the CBA must include "clear and unmistakable" language waiving the covered employees' state right "for a court even to consider whether it could be given effect."

*Cramer*, 255 F.3d at 692 (quoting *Livadas*, 512 U.S. at 125). There is no assertion by Local 467 or evidence in the terms of the CBA that Lencioni's union bargained away her FEHA rights.

13

Thus, Local 467's reliance on the CBA does not put Lencioni's claims within the ambit of section 301.

The Court rejects Local 467's argument that Lencioni's claims substantially depend on Local 467's past practices regarding the CBA, which necessarily implicate the need for arbitration. *See id.* (citing *Kobold*, 2016 WL 4191521, at *15). This argument misreads *Kobold*, where the Ninth Circuit explained that an "arbitrator [had] decided the question raised under the first [*Kobold*] factor—whether [the plaintiff's] claims arise out of the . . . CBA or, rather 'exist independently' of it. In asking us to conclude that her claims are independent of the . . . CBA, [the plaintiff] is, in effect, asking us to overturn the arbitrator's interpretation of the contract." *See Kobold*, 2016 WL 4191521, at *15. As a factual matter, no arbitrator has addressed Lencioni's claims. Regardless, as explained above, Lencioni's claims might require consideration, not interpretation, of the CBA.

The Court also rejects Local 467's invitation to exercise jurisdiction because Lencioni's claims are "arguably preempted." *See* Mot. at 4, n. 2. For this proposition, Local 467 relies on *Navarro*, where the court found that a plaintiff's unlawful wage deduction claims "require[d] actual interpretation of the CBA." *See Navarro*, 2008 WL 3842984, at *5. However, in *Navarro*, the court also explained that section 301 does not preempt claims based on state law rights that are independent of a CBA and "nonnegotiable such that they cannot be bargained away in a CBA." *Id.* at *3 (citing *Miller v. AT&T Network Sys.*, 850 F.2d 543, 545–47 (9th Cir. 1988). As Lencioni argues, the Ninth Circuit has explicitly held that FEHA and *Tameny* respectively establish independent and nonnegotiable state law rights. *See Jimeno*, 66 F.3d at 1528 (citing *Paige*, 826 F.2d at 863; Cal. Gov't Code § 12920). Thus, Local 467's reliance on *Navarro* is misplaced.[5]

///
///
///
///

---

[5] Because the Court finds that Lencioni's claims are not preempted, it need not consider Local 467's request that it exercise supplemental jurisdiction.

**IV.   CONCLUSION**

For the foregoing reasons, Lencioni's motion for remand is GRANTED.  The action is REMANDED to California Superior Court, County of San Mateo for all further proceedings.  The Clerk is directed to close the file.

**IT IS SO ORDERED.**

Dated: October 17, 2016

JOSEPH C. SPERO
Chief Magistrate Judge